Johnny Dean JOHNSON *v.* STATE of Arkansas

CR 03-487                                              193 S.W.3d 260

Supreme Court of Arkansas
Opinion delivered September 23, 2004

*J. Russell Green*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David J. Davies*, Ass't Att'y Gen., for appellee.

RAY THORNTON, Justice. Appellant, Johnny Johnson, brings this appeal challenging his convictions for first-degree murder and arson. On appeal, appellant claims that there was insufficient evidence to sustain his convictions, that the trial court erred in denying the motion to suppress statements made by appellant to fellow inmates in the Stone County Jail, that the trial court erred by allowing consideration of uncorroborated accomplice testimony, and that the court erred by admitting into evidence autopsy photographs of the victim. We affirm appellant's convictions.

On November 11, 2002, the Stone County Sheriff's Office responded to a call about a trailer fire. The trailer, the home of Johnny Archer, was found burned to the ground, and inside the wreckage, a burned body was discovered. Appellant turned himself in on January 22, 2001, and was placed in the Stone County Jail awaiting trial. On January 18, 2003, a jury convicted appellant of

first-degree murder and arson. Appellant was sentenced to life imprisonment on the murder charge and twenty years' imprisonment on the arson charge with the sentences to run consecutively. Appellant brings this appeal challenging his conviction.

We treat an appeal of a motion for a directed verdict as a challenge to the sufficiency of the evidence. *O'Neal v. State*, 356 Ark. 674, 158 S.W.3d 175 (2004) (*quoting Edmond v. State*, 351 Ark. 495, 95 S.W.3d 789 (2003)). In a challenge to the sufficiency of the evidence, a conviction will be upheld when there is substantial evidence supporting it. We view the evidence in a light most favorable to the state and consider only evidence supporting the conviction. The evidence will be sufficient when it is of such force and character that it, with reasonably certainty, compels a decision without resort to speculation or conjecture. Circumstantial evidence may be sufficient evidence but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.*

With this standard in mind, we turn to appellant's argument regarding his first-degree murder conviction. First-degree murder requires that the defendant, with the purpose of causing the death of another person, causes the death of another person. Ark. Code Ann. § 5-10-102(a)(2) (Supp. 2003). Purposeful conduct occurs when a person acts with the conscious object to engage in the conduct or to cause the result thereof. Ark. Code Ann. § 5-2-202(2)(Supp. 2003). *Mens rea* often must be shown through circumstantial evidence. *Akbar v. State*, 315 Ark. 627, 869 S.W.2d 706 (1994).

In the present case, Stone County law-enforcement officers began their investigation on November 11, 2000. The home of Mr. Johnny Archer had been burned to the ground and a body was found amid the wreckage. Further investigation by the State revealed that Mr. Archer was last seen in the company of the appellant, Jimmy Johnson, and his brother, Kurt William Von Richter. The evening before the investigation began, appellant and Von Richter left the state for California. On January 22, 2001, appellant turned himself in to the Stone County Sheriff's Office and gave a statement after being informed of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

While in the Stone County Jail awaiting trial, appellant made a confession to a fellow inmate, Douglas Begley. Begley testified that appellant told him, "Kurt [and I] killed Johnny

Archer . . . we went to his house to get some beer and a shotgun. And we just barged on in and said we killed him and I threw him over the top of the wood stove and kicked the pipe off the stove and it burned him up and we left." Begley immediately reported what appellant had said to the guards. Subsequent to this confession, it was learned that Von Richter had been arrested in California and had implicated his brother in the crimes. The next day, appellant again made a statement in the presence of Begley, Ivan Wilson, and Kent Leonard. According to Begley, appellant stated that, "Kurt didn't have anything to do with it that just [appellant] did it. [Appellant] killed him with his hands. [H]e beat him down, hitting him in the head with his hands and stuff." Ivan Wilson also testified that appellant offered a confession to Begley while Wilson and Leonard were in the common room at the Stone County Jail. Wilson testified that appellant admitted to trying to borrow a gun and money from Mr. Archer, killed him in a fight, and placed Mr. Archer's body on the stove.

At trial, the State presented evidence from the medical examiner, Dr. Frank Peretti, about the nature of the fire and the amount of decomposition of the body. Dr. Peretti was unable to determine the cause of death because of the extensive damage to the body. It was estimated that Mr. Archer had weighed 140 pounds, but only thirty-eight pounds remained after the fire. Dr. Peretti testified that, from the lack of soot and ash accumulation in the nasal cavities, Mr. Archer was already dead or nearly so when the fire began.

Special Agent Arthur Raf of the Arkansas State Police testified about the investigation. He responded to a call to take photographs and assist in the investigation of a fire. He stated that the fire had completely destroyed Mr. Archer's home. With the assistance of the Deputy Sheriff at the scene, Agent Raf removed the roof to photograph what was underneath and to reach the body. Agent Raf further supervised the collection of evidence from the scene, including ash samples and the coroner's collection of the body. Agent Raf also photographed the tire marks leading away from the destroyed home. He testified that the tracks indicated that the vehicle had left quickly. Agent Raf contacted the Bureau of Alcohol, Tobacco, and Firearms ("ATF") for further assistance.

Special Agent Steven Steele from the ATF testified as an arson-investigation expert about the likely origin, spread, and cause of the fire as well as the likely value of the destroyed

property. He testified that the fire began by the stove located in the living room and that it was particularly intense for a fire of that nature from the extent of the damage to the trailer. He stated that it was likely aided by an accelerant, but that there was no evidence of an accelerant. Agent Steele stated that it was possible for an accelerant to be used and to be consumed in the fire if the fire is not reported and stopped. He further testified that the value of the trailer and its contents was likely to be between $20,000.00 and $25,000.00.

Kurt Von Richter, appellant's half-brother, testified about the events leading up to the evening of November 10, 2000. He testified that he and appellant pawned a stereo amplifier for money to buy beer and spent a good portion of the evening drinking. In the course of the evening, they had encountered Mr. Archer several times. Mr. Archer allowed Von Richter and appellant to come over to "drink a couple of beers and listen to music and stuff." Von Richter testified that appellant told him he wanted to "beat Archer up." Over the course of the evening, Mr. Archer and appellant got into several disagreements over the volume of the stereo. Von Richter started to leave and was in the car when he heard appellant and Mr. Archer speaking in raised voices to each other. Von Richter testified that it sounded like fighting was going on inside. He returned to the home and saw appellant crouched over Mr. Archer. Von Richter testified that appellant put Mr. Archer's body on the stove and knocked the flue off of the stove. The two then fled to California. Von Richter testified that while on the trip to California appellant spoke often of killing Mr. Archer and that he had enjoyed killing him. Appellant left California while Von Richter was in jail. Subsequently, the Federal Bureau of Investigation arrested Von Richter in connection with Mr. Archer's death. He was returned to Arkansas and charged with first-degree murder and arson.

All of the inmates testifying at trial stated that they were not asked or pressured by the guards or any other State official to elicit these confessions, rather that such actions were a normal part of prison life.

When a defendant has confessed, Ark. Code Ann. § 16-89-111(d) (Supp. 2003) provides that "[a] confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof the offense was committed." *Id.* We have held this to mean that the State must present evidence of the existence of an injury or harm that constitutes a

crime and that the injury or harm was caused by someone's criminal activity. *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001). This does not require the State to connect the defendant to the criminal act through independent evidence, but rather the State need only to show that the offense occurred. *Hart v. State*, 301 Ark. 200, 783 S.W.2d 40 (1990).

■ Based on the forgoing evidence we conclude that the evidence is substantial enough to compel a conviction on the first-degree murder charge and the State proved the elements necessary for corroboration of a confession through the testimony of appellant's brother, Von Richter, and the police investigation. The trial court did not err in denying the motion for a directed verdict with respect to the murder charge.

Appellant also challenges the sufficiency of the evidence to support his conviction for arson. A person commits arson if he starts a fire or causes an explosion with the purpose of destroying or otherwise damaging an occupiable structure that is the property of another person. Ark. Code Ann. § 5-38-301(a)(1) (Supp. 2003). The State brought the arson charge as a class B felony, which requires that the property sustain between $5,000.00 and $15,000.00 worth of damage. Ark. Code Ann. § 5-38-301(b)(4).

■■ In addition to the evidence previously described, the State also introduced testimony from Special Agent Steele of the ATF that valued the property damage at between $20,000.00 and $25,000.00. Appellant did not object to the property valuation being placed in evidence. Because appellant failed to object, the Special Agent Steele's valuation may not be challenged on appeal. *Friar v. State*, 313 Ark. 253, 854 S.W.2d 318 (1993). With this valuation in the record, we conclude that there was sufficient evidence to support the arson conviction in that there was substantial evidence to compel a conclusion without speculation or conjecture. Accordingly, the trial court did not err in denying the motion for a directed verdict with respect to the arson charge.

■■ Appellant further argues that the confessions made to fellow inmates should have been suppressed by the trial court and that absent the confessions, his convictions are based on uncorroborated accomplice testimony. Appellant, however, failed to cite legal authority in his argument for support of his contention. Claims that are not supported by citation to authority or convincing argument will not be considered by this court. *Weath-*

*erford v. State*, 352 Ark. 324, 101 S.W.3d 227 (2003). Furthermore, the challenge to the conviction on the basis of uncorroborated accomplice testimony was not raised below and is therefore not preserved for appellate review. *Friar v. State*, 313 Ark. 253, 854 S.W.2d 318 (1993).

We now turn to the final point on appeal of whether the admission of autopsy photographs constituted reversible error. The admission of photographic evidence will not be reversed absent an abuse of discretion by the trial court. *Newman v. State*, 353 Ark. 258, 106 S.W.3d 438 (2003). We do not condone the wholesale or wanton admission of photographic evidence especially where the photographs have only a tenuous claim to relevance and the prejudice is great. *Id.* In *Newman, supra*, we noted that, among other acceptable purposes, photographic evidence may be used to shed light on some issue in the case, prove an element of the offense, corroborate testimony, enable a witness to testify more effectively, or help the jury better understand testimony. Even the most gruesome of pictures may be admissible if the probative value of one of the above factors is significant. *Id. See also O'Neal, supra.*

In this case, the photographs in question are autopsy photographs of the victim and condition in which he was found. Dr. Peretti could not pinpoint a cause of death, and he testified that the photographs would be helpful to the jury in showing why the cause of death was difficult to determine and to more fully explain the damage from the fire to the victim. The trial court properly weighed the potential prejudice against the probative value of the photographs. We hold that it was not an abuse of discretion to allow the photographs into evidence.

Pursuant to Ark. R. Sup. Ct. 4-3(h), the record in this case has been reviewed for any reversible error in the decisions by the trial court adverse to appellant. Finding none, the convictions and imposition of a life sentence and a twenty year sentence to run consecutively are affirmed.