2012 Ark. 57

**Vadarian MEADOWS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–602.**

Supreme Court of Arkansas.

Feb. 9, 2012.

Rehearing Denied March 15, 2012.

Robert Lamar Depper Jr., El Dorado, for appellant.

Dustin McDaniel, Atty. Gen., Rebecca Kane, Little Rock, for appellee.

COURTNEY HUDSON GOODSON, Associate Justice.

L₁A jury sitting in the Union County Circuit Court found appellant Vadarian Meadows guilty of capital murder, residential burglary, and theft of property. Appellant received a sentence of life without the possibility of parole for capital murder, and he was sentenced to terms of five and three years' imprisonment, respectively, for committing the offenses of residential burglary and theft of property. For reversal, appellant contends that the evidence is not sufficient to support his convictions because the State failed to corroborate his confession and the testimony of an accomplice. He also asserts that the capital murder and first-degree murder statutes are unconstitutionally vague and cause confusion because the statutes contain similar elements. We affirm.

The record reflects that, sometime after 10:00 p.m. on the evening of December 23, 2009, deputies of the Union County Sheriff's Office responded to a call at the rural home of Joel Telford on Lonesome Dove Trail. Once there, they discovered the body of Clarence Ritchey lying face down in the yard. Ritchey, who was deceased,

had sustained two gunshot wounds to the head. Ritchey and his wife, Janet, lived next door to Telford, who is Janet's son. During the course of their investigation, the sheriff's office developed appellant, Marquita Meeks, and Victor Meadows, appellant's cousin, as suspects in the murder. Subsequently, the prosecuting attorney in Union County charged the three with the offenses of capital murder, residential burglary, and theft of property. Prior to trial, the circuit court granted appellant's motion to sever to be tried individually.

At trial, Janet testified that she and Ritchey had retired for the evening on December 23rd but were awakened by the sound of their dogs barking. Fearing that a coyote might be after their horse, Ritchey arose and went outside to investigate. Janet said that she heard gunfire and that afterward she repeatedly called out to Ritchey from the front porch. When he did not respond, she went to look for him. In the dark, she tripped and fell onto his body.

At the scene, the deputies recovered three spent, .380 shell casings. An inspection of Ritchey's body revealed that he was holding a Keltec semiautomatic handgun that was inoperable because the slide had not closed. The deputies also found six long guns wrapped in a blanket near Ritchey's body. Nearby in a wooded area, the deputies located an embankment on which they found skid marks where it appeared that someone had slid down the incline. In that location, they also observed a shoe impression and a piece of white fiber entangled in a barbed-wire fence. During the subsequent investigation, the deputies recovered a Llama .380 handgun and .380 ammunition from a closet in the home of John Meeks, Marquita Meeks's father.

Telford, who was not at home at the time of the shooting, testified that the back door of his home appeared to have been pried open and that it was not in that condition when he left the house earlier that night. He said that the long guns found in the yard belonged to him and that the blanket in which they were wrapped had been draped over the sofa before he left. Telford stated that, a day or two before the murder, he had bought hydrocodone pills from Victor Meadows on credit. He testified that Victor had called him twice that night demanding to be paid for the pills. Telford said that he gave no one permission to enter his home or take his guns and that he did not trade the guns for the pills he received from Victor.

Marquita Meeks testified that she and Victor, her boyfriend, lived with her parents in December 2009. Marquita recalled that, on the night of December 23, 2009, she and Victor were driving around in her parents' Suburban and that Victor had spoken to Telford by phone asking to be paid for pills Telford had bought. She said that they picked up appellant, stopped at the Hardy Mart convenience store, and continued driving while smoking marijuana. Marquita said that Victor pulled out a black handgun during the drive. This gun looked familiar to her, and she stated that it was a handgun that her father kept in a closet. Marquita testified that Victor drove down a road, stopped, and told her to turn the vehicle around. She said that appellant and Victor walked away in the darkness and that they returned to the vehicle after she heard gunfire. She said that both men were breathing hard when they jumped into the vehicle. Marquita testified that appellant asked several times to go back to retrieve some guns but that Victor refused, saying, "Don't you know that man is dead back there?" She said that she was shocked to learn that the dead man was Telford's stepfather. Marquita testified that Victor told her that Ritchey had a gun and that "he had to do it."

The State also introduced into evidence a recording and transcript of the statement appellant gave to Chief Investigator Clark Burton. In his statement, appellant said that Victor informed him about the transaction with Telford and that he agreed to accompany Victor to Telford's house for the purpose of stealing guns because of the money Telford owed Victor for pills. Appellant acknowledged that both he and Victor were armed and that they drove with Marquita to Telford's house after stopping at a convenience store. Appellant stated that he and Victor went inside Telford's house and gathered up a number of guns that they placed in a blanket. He said that, when he went back outside, he heard someone shout, "Who is you?" Appellant stated that he ran into the bushes and then heard gunshots and that he fell onto some barbed wire as he was making his way back to the vehicle. Appellant also stated that the gun Victor possessed that night belonged to Marquita's father.

The State presented the testimony of an associate medical examiner that Ritchey received a contact gunshot wound that entered just beneath his nose. Ritchey had another medium-range gunshot wound that entered the back of his head on the left side. The medical examiner classified the manner of death as homicide. A firearm and tool-mark examiner from the state crime lab testified that the bullets removed from Ritchey's head were shot from the Llama .380 handgun recovered from the Meeks's residence. The shell casings found near Ritchey's body were fired from that same gun. The State also introduced into evidence a still photograph taken from a video camera at the Hardy Mart convenience store showing appellant and Victor inside the store together at approximately 9:30 p.m. on the night of the murder.

At the conclusion of all evidence, the circuit court instructed the jury on residential burglary, theft of property, capital murder, and the lesser-included offenses of first- and second-degree murder. Based on the evidence presented, the jury found appellant guilty of capital murder, residential burglary, and theft of property. Following the entry of the judgment and commitment order, appellant filed a timely motion for a new trial asserting that the overlapping elements of the capital murder and first-degree-murder statutes rendered the statutes unconstitutionally vague. In support of this motion, appellant submitted the affidavit of the jury foreman who approached appellant's counsel after trial and who stated that jurors were confused by the overlapping instructions regarding the two offenses and that the jurors believed that they had no choice but to find appellant guilty of the greater offense. The circuit court did not rule on the motion, and thus it was deemed denied after thirty days. See Ark. R.Crim. P. 33.3(c). This appeal followed.

As his first point on appeal, appellant argues that the circuit court erred in denying his motion for a directed verdict because the State failed to adequately corroborate his confession and the testimony of Meeks, his accomplice. On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Smoak v. State,* 2011 Ark. 529, 385 S.W.3d 257. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Anderson v. State,* 2011 Ark. 461, 385 S.W.3d 214. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Camp v. State,* 2011 Ark. 155, 381 S.W.3d 11. On appeal, we review the evidence in the light

most favorable to the State and consider only the evidence that supports the verdict. *Williams v. State,* 2011 Ark. 432, 385 S.W.3d 157.

When a defendant has confessed, Arkansas Code Annotated section 16–89–111(d) (Repl.2005) provides that "[a] confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the offense was committed." The requirement for other proof is sometimes referred to as the corpus delicti rule and requires only proof that the offense occurred and nothing more. *Ware v. State,* 348 Ark. 181, 75 S.W.3d 165 (2002). In other words, under the corpus delicti rule, the State must prove (1) the existence of an injury or harm constituting a crime and (2) that the injury or harm was caused by someone's criminal activity. *Ventry v. State,* 2009 Ark. 300, 318 S.W.3d 576.

When accomplice testimony is considered in reaching a verdict, Arkansas law provides that a person cannot be convicted based on the testimony of an accomplice "unless corroborated by other evidence tending to connect the defendant ... with the commission of the offense." Ark.Code Ann. § 16–89–111(e)(1)(A) (Repl. 2005). Corroboration must be evidence of a substantive nature, since it must be directed toward proving the connection of the accused with the crime, and not directed toward corroborating the accomplice's testimony. *Camp v. State, supra.* Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *Id.* Rather, it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. *MacKool v. State,* 365 Ark. 416, 231 S.W.3d 676 (2006). The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the remaining

evidence independently establishes the crime and tends to connect the accused with its commission. *Id.* The presence of an accused in the proximity of a crime, opportunity, and association with a person involved in a crime in a manner suggestive of joint participation, are relevant factors in determining the connection of an accomplice with the crime. *Parker v. State,* 355 Ark. 639, 144 S.W.3d 270 (2004) (quoting *Andrews v. State,* 344 Ark. 606, 613–14, 42 S.W.3d 484, 489 (2001)). When two or more persons assist each other in the commission of a crime, each is an accomplice and criminally liable, ultimately, for his own conduct, but he cannot disclaim responsibility because he did not personally take part in every act that went to make up the crime as a whole. *Id.*

In this appeal, appellant contends that, when a conviction is based on both a confession and accomplice testimony, the State is required to corroborate the confession with independent proof that tends to connect the defendant with the commission of the offense. Thus, he argues that the evidence in this case is not sufficient because the State failed in its burden of independently corroborating both his out-of-court-confession and the testimony of the accomplice with evidence tending to connect him with the commission of the offenses. In response, the State asserts that appellant misconstrues the requirements for corroborating confessions and accomplice testimony. The State's point is well taken.

This court has long held that a defendant's voluntary confession is sufficient to corroborate an accomplice's testimony, as a confession certainly connects the admitting defendant with the commission of the crime. *See Booe v. State,* 188 Ark. 774, 67 S.W.2d 1019 (1934); *Knowles v. State,* 113 Ark. 257, 168 S.W. 148 (1914). We have also stated that, to corroborate a

confession, the State is not required to connect the defendant to the criminal act through independent evidence; rather, the State need only show that the offense occurred. *Johnson v. State,* 358 Ark. 460, 193 S.W.3d 260 (2004); *see also Ventry, supra; Ware, supra; Tinsley v. State,* 338 Ark. 342, 993 S.W.2d 898 (1999). Thus, our law does not require additional corroboration of a confession, even when it stands to corroborate the testimony of an accomplice. Evidence demonstrating the connection of the accused with the crime is simply not an element of the corpus delicti. *Hall v. State,* 361 Ark. 379, 206 S.W.3d 830 (2005) (citing *Hart v. State,* 301 Ark. 200, 783 S.W.2d 40 (1990)). Here, the State presented evidence that Ritchey died at the hands of another; that Telford's home was burglarized; and that Telford's guns were removed from his home. Thus, the State offered evidence to corroborate appellant's confession by establishing that the crimes were committed. In turn, appellant's professed participation in the crimes, as well as the photograph of appellant and Victor at the convenience store just prior to the criminal activity, provided evidence tending to connect him with the commission of the offenses. Based on the evidence showing that both corroboration requirements were met, we hold that there was substantial evidence to support appellant's convictions.

Appellant next argues that the capital murder statute, Arkansas Code Annotated section 5–10–101(a)(1)(B) (Supp. 2011),[1] and the first-degree-murder statute, Arkansas Code Annotated section 5–10–102(a)(1)(A)–(B) (Repl.2006),[2] are unconstitutionally vague because they are substantially identical and result in jury confusion. Appellant concedes that we have rejected this argument on any number of occasions. *See, e.g., Flowers v. State,* 362 Ark. 193, 208 S.W.3d 113 (2005); *Williams v. State,* 346 Ark. 54, 56 S.W.3d 360 (2001); *Sanders v. State,* 317 Ark. 328, 878 S.W.2d 391 (1994); *Cromwell v. State,* 269 Ark. 104, 598 S.W.2d 733 (1980). He contends, however, that the instant case is distinguishable because the jury foreman's affidavit discloses actual confusion caused by the overlapping jury instructions. As another distinction, appellant points out that the circuit court, when instructing the jury, stated that the capital-murder and first-degree-murder statutes were "identical" and "probably a little confusing." In response, the State initially asserts that the issue is not preserved for appeal. On the merits, the State contends that the law on this issue is well established and that the juror's affidavit provides no reason to depart from our settled law because Rule 606(b) of the Arkansas Rules of Evidence precludes consideration of a juror's affidavit that reveals matters that occurred during the jury's deliberations. The record bears out the State's contention that the issue is not preserved for appeal.

1. This provision of the capital-murder statute states that "a person commits capital murder if, acting alone or with one (1) or more other persons, the person commits or attempts to commit ... residential burglary, ... and in the course of and in furtherance of the felony or in immediate flight from the felony, the person or an accomplice causes the death of a person under circumstances manifesting extreme indifference to the value of human life."

2. This provision of the first-degree murder statute states that "[a] person commits murder in the first degree if, acting alone or with one (1) or more other persons, the person commits or attempts to commit a felony, and in the course of and in furtherance of the felony or in immediate flight from the felony, the person or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life."

Prior to the severance, codefendant Victor Meadows moved to quash the information on the ground that the overlap in the statutes rendered them unconstitutionally vague. The circuit court denied the motion to quash at a pretrial hearing. The record of this hearing does not indicate that appellant joined in this motion. Although appellant relies on Victor's pretrial motion, we have held that an appellant cannot benefit from objections made on behalf of another defendant or personal exchanges between counsel for the other defendant and the circuit court. *Rockett v. State*, 319 Ark. 335, 891 S.W.2d 366 (1995); *Smith v. State*, 308 Ark. 603, 826 S.W.2d 256 (1992). Unless an appellant's counsel objects on appellant's behalf, the matter is not preserved for appeal. *Rockett, supra; Smith, supra.* In addition, appellant's attempt to raise an objection over any confusion that might be caused by the jury instructions came too late in the motion for a new trial. We have often held that objections to a jury instruction must be made before the jury retires, and objections made after the jury retires to deliberate are not timely. *Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993); *Tosh v. State*, 278 Ark. 377, 646 S.W.2d 6 (1983); *Brown v. State*, 277 Ark. 294, 641 S.W.2d 7 (1982). Pursuant to our case law, we decline to address the issue because it is not preserved for appeal. *Sweet v. State*, 2011 Ark. 20, 370 S.W.3d 510.

The record in this case has been examined for reversible error in accordance with Arkansas Supreme Court Rule 4–3(i), and none has been found.

Affirmed.