

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–13–595

| | |
|---|---|
| | **Opinion Delivered** December 11, 2013 |
| RICHARD LEE WOOTEN<br>APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT<br>[NO. 63CR-09-362-4] |
| V. | |
| | HONORABLE ROBERT HERZFELD, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## BRANDON J. HARRISON, Judge

Richard Wooten asks us to reverse the order that revoked his suspended imposition of sentence (SIS) and sentenced him to imprisonment for eighteen years because, he argues, the revocation was not sufficiently supported by the evidence. We affirm.

On 7 May 2010, Wooten pled no contest to the charge of possession of firearms by certain persons, for which he received a sentence of five years' SIS. The conditions of his suspension included not committing a criminal offense punishable by imprisonment; not using, selling, distributing, or possessing any controlled substance; not associating with persons who have been convicted of felonies; not purchasing, owning, or possessing any firearm or other prohibited deadly weapon; and not being in the company of any person in possession of a firearm or other prohibited deadly weapon.

SLIP OPINION

In June 2012, the State petitioned to revoke Wooten's SIS, alleging that he had been arrested and charged with possession of a firearm by certain persons, terroristic threatening, tampering with evidence, and a number of traffic offenses. The attached arrest report also stated that Wooten was charged with possession of a controlled substance. The petition alleged that the vehicle Wooten operated when he was arrested contained two knives and that Wooten's passenger, Michael Diggs, was a convicted felon.

A revocation hearing was held and Michael Diggs testified that he had known Wooten for thirteen or fourteen years "through drug dealing." Diggs testified that, on 14 April 2012, Wooten had picked him (Diggs) up in Hot Springs and they had gotten high on methamphetamine. The next day, while he and Wooten were riding in Wooten's car, a police officer got behind the vehicle, which caused Wooten to become paranoid and act "real strange." According to Diggs, Wooten retrieved a baggy of methamphetamine from his pants, tossed it to Diggs, and told him to "to get rid of it or he'd kill me." Diggs ate the baggy's contents. Diggs also stated that Wooten struggled to retrieve another object from his pants, then threw "something blue" out the passenger window. Wooten told Diggs afterward that he threw a gun out the window and to "keep my mouth shut or he'd kill me."

Diggs admitted that he lied to the police several times about his name because he was "[j]ust being stupid." And he admitted that he did not immediately tell the police about Wooten throwing a gun out of the car or that he had eaten methamphetamine. He also admitted that he had been convicted of a felony before, and he said that the conduct that he had testified to violated his parole. Diggs also stated that Wooten knew that he (Diggs) was

2

a felon. On cross-examination, Diggs indicated that the prosecutor told him he might "get in trouble" and possibly have his parole revoked if he did not show up to testify. Diggs did not remember what charges he received from the April 15 incident, but he agreed that he pled guilty to a misdemeanor and received time served. He also agreed that testifying against Wooten was a part of his plea agreement.

Jeff Porter, an officer with the Bryant Police Department, testified that he passed Wooten and Diggs in his vehicle and that "they were both kind of staring at me." So he turned his patrol car around and followed Wooten and Diggs as they drove toward Mills Park Road. Porter ran a tag on the vehicle, and when the tag didn't return to the vehicle, he made a traffic stop. Porter learned during the stop that Wooten, who was the driver, was driving on a suspended license. Porter returned to the vehicle, asked Wooten to step out, and noticed a knife lying under the arm rest on the right side of the driver's seat. The court noted during the hearing that the knife was a "six-inch buck knife with a silver handle" that "appears to be sharp and functional." Porter testified that two other knives were eventually found, one on the floorboard on the front passenger side, and the other underneath the driver's seat near Wooten's right leg.

Sergeant Leon Prickett testified that he assisted Officer Porter in transporting Wooten and Diggs to the Saline County Detention Center after the traffic stop. He explained that he spoke to Diggs at the scene, and Diggs told him that he had swallowed methamphetamine. Upon arriving at the detention center, Diggs also told Sergeant Prickett that Wooten had thrown a pistol, wrapped in a little blue towel, out the car window. Prickett testified that he

returned to the area that Diggs described and "within thirty seconds" located a blue towel and a .22-caliber pistol. Prickett testified that the towel had the letter "W" on it. On cross-examination, Prickett disagreed that the letter looked like an "M" when held upside-down. But he conceded that he had not submitted the gun for a fingerprint analysis or submitted the towel for DNA analysis.

At the close of the State's case, Wooten asked the court to dismiss the petition, arguing that the State had offered no proof that he was convicted or even charged with the crimes alleged in the petition, that a knife was not a "prohibited" weapon, and that the State had failed to prove beyond a preponderance of the evidence that Wooten and Diggs "were anything more than passengers in a vehicle. They have to prove that he associated with, not just the mere acquaintances with." The court denied the motion, and the defense rested without presenting any witnesses. In closing, the defense argued that all the relevant evidence had come from Diggs, an admitted liar, and that the preponderance of the evidence had not been met based on Diggs's testimony.

The court found that Wooten had violated the terms of his SIS by associating with a felon, using methamphetamine, and possessing a firearm. The court found Diggs "to be about as credible as an admitted felon, admitted liar can be," but then stated that he "did find his testimony to be believable based on the nature of his testimony, the way he—the fact that he actually admitted things that were against his interest, and that alone would have been enough." An order sentencing Wooten to eighteen years in prison was entered, and Wooten appealed it.

4

If a court finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his suspension, the court may revoke the suspension at any time prior to the expiration of the period of suspension. Ark. Code Ann. § 16–93–308(d) (Supp. 2011). The State bears the burden of proof, but it need only prove that the defendant committed one violation of the conditions. *Haley v. State*, 96 Ark. App. 256, 240 S.W.3d 615 (2006). When appealing a revocation, the appellant has the burden of showing that the trial court's findings are clearly against the preponderance of the evidence. *Id.* Evidence that is insufficient for a criminal conviction may be sufficient for the revocation of probation or suspended sentence. *Id.* Because the determination of a preponderance of the evidence turns on questions of credibility and the weight to be given testimony, we defer to the circuit court's superior position. *Id.*

Wooten argues that the court's revocation was based solely on Diggs's self-serving testimony and that without it no other evidence supports the allegations that Wooten knew Diggs was a felon or that he (Wooten) used illegal drugs. And regarding the .22 pistol, Wooten claims that the blue towel with the initial "W" on it does not corroborate Diggs's story. Wooten cites *Meadows v. State*, 2012 Ark. 57, 386 S.W.3d 470, which explained that the test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the remaining evidence independently establishes the crime and tends to connect the accused with its commission. Wooten did not raise any lack-of-corroboration argument below, so we will not consider it here.

This case rested largely on Diggs's and the officers' credibility. The circuit court was in the best position to judge their credibility. Deferring to its superior position to judge the credibility of all the testimony presented, we hold that the revocation was not clearly against the preponderance of the evidence.

Affirmed.

PITTMAN and WYNNE, JJ., agree.

*Digby Law Firm*, by: *Bobby R. Digby II*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen, and *Drew Aylesworth*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the supervision of *Darnisa Evans Johnson*, Deputy Att'y Gen., for appellee.