Cite as 2025 Ark. App. 101

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CR–24–276

|  |  |
|---|---|
| ROBERT ZANE PUCKETT<br><br>                    APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br><br>                    APPELLEE | **Opinion Delivered** February 19, 2025<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT<br>[NO. 63CR-23-114]<br><br><br>HONORABLE JOSH FARMER, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

From a defense standpoint, your pants pocket is almost the worst place police can find drugs. That truth defeats this appeal, in which Robert Zane Puckett challenges the sufficiency of evidence supporting his conviction as a habitual offender for possessing more than two, but less than ten, grams of methamphetamine in violation of Ark. Code Ann. § 5-64-419(b)(1)(B) (Repl. 2024). A Saline County jury convicted him of possessing 5.496 grams of methamphetamine police found in a tiny Tupperware container in his pants pocket when the Benton Police Department Special Investigations Unit (SIU) executed a search warrant in December 2022 at a house on Cottonwood Place. The 6:00 a.m. search followed a lengthy SIU narcotics investigation of Hunter Wilson, a resident and (Puckett would testify) a friend.

Puckett was one of several people in the house that morning. He didn't live there. He wasn't the subject of the investigation, either, though the jury would hear that he was

on probation for a Garland County conviction for possessing less than two grams of cocaine or methamphetamine in 2020. And from the moment Det. Chris Benham found the drugs, Puckett maintained they were not his drugs—or once, according to Detective Benham, "that they were not his pants."

The problem, Puckett contended in his directed-verdict motions and here again on appeal, is that the State did not sufficiently prove beyond a reasonable doubt that he not only possessed the methamphetamine but also "knowingly" possessed it.[1] Puckett admitted on the witness stand that the drugs were in his pocket when Detective Benham searched him.[2] He said he told Benham "that [the drugs] were not in [his] pants when [he] went to sleep." He continued, "I didn't tell him that they weren't my pants. They were my pants." In a patrol-car video the State introduced, Puckett tells another arrestee just after the arrest that he doesn't know how the drugs got there.

Puckett told the jury that two days before these events, he and his girlfriend had broken up. He asked his friends Hunter Wilson and Michael Reynolds if he could stay with them because he didn't have anywhere else to go. He said he didn't know Wilson was selling drugs there. He was sleeping on the couch in the living room after the second night when, about forty-five seconds before police breached the door, something woke him up. Puckett could see through a front window behind the couch that it was very bright

---

[1]AMI Crim. 2d 64.419. The model jury instruction requires proof of a knowing or purposeful mental state, though that requirement is not stated in the current version of the simple possession statute. *See* AMI Crim 2d 6404 note (discussing history). We assume, as the parties have, that the State was required to prove this.

[2]The container was displayed to the jury but not introduced in evidence. The State described it as two inches square, or two inches by an inch and a half in size.

outside. He was confused. "Everybody seemed to be in a panic," he said. The police were outside with multiple vehicles. Puckett heard them knock-and-announce the search warrant. He jumped up and ran to the door, becoming the first occupant police encountered.

Puckett characterized himself as a heavy sleeper and was certain the methamphetamine was not in his pocket when he said Goodnight Moon. Yet, when police pulled him out of the house, the drugs "miraculously were" there. Puckett had since come to understand, he said, that Reynolds got scared before the raid and planted them when he was still asleep.[3]

In an appeal of the sufficiency of evidence to convict, we assess whether the evidence supporting the jury's verdict, direct or circumstantial (or both) is forceful enough to compel beyond speculation or conjecture the conclusion that the defendant is guilty. *Martin v. State*, 2019 Ark. App. 19, 567 S.W.3d 558. "Supporting" is a load-bearing word in that statement: we view the evidence in the light most favorable to the State (and therefore to the verdict) without weighing it against the evidence that favors Puckett. *Kolb v. State*, 2021 Ark. 58. And assessing the credibility of witnesses is the jury's job, not ours. *Polk v. State*, 348 Ark. 446, 73 S.W.3d 609 (2002); *Dyas v. State*, 2020 Ark. App. 52, 593 S.W.3d 55.

In practice, this means that the jury was free to believe Puckett's testimony that someone planted the drugs on him while he was asleep. Or not. If it had found him not guilty, its verdict of acquittal "could not [have been] reviewed, on error or otherwise"

---

[3]Puckett came to this understanding after a conversation with an unnamed friend. The State objected that his testimony about Reynolds's motive was speculation, but the circuit court did not rule on the objection.

because "the jury holds an unreviewable power to return a verdict of not guilty even for impermissible reasons." *McElrath v. Georgia*, 601 U.S. 87, 94–95 (2024) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977) and *Smith v. United States*, 599 U.S. 236, 253 (2023)). But the jury convicted him instead.

On the record, Puckett is a young man with at least one past felony conviction for drug possession who was arrested in the raid of a suspected drug house. Drugs were found in the house. And in his pants.[4] We have repeatedly held that testimony that drugs were found in the pocket of a defendant's clothes is sufficient to prove actual possession. *Martin*, *supra*; *Thomas v. State*, 2014 Ark. App. 721; *see also Dougan v. State*, 2023 Ark. App. 75, 660 S.W.3d 375 (affirming revocation finding that defendant constructively possessed methamphetamine in jacket he wasn't wearing that contained his identification). More broadly, our refrain in these cases that it is "not necessary for the State to prove literal physical possession of drugs in order to prove possession"[5] carries an important corollary: if the State *does* prove literal physical possession, you're pretty much sunk from a sufficiency-of-the-evidence standpoint.

The jurors were not required to set aside their common knowledge or their own observations and experiences in life. AMI Crim. 2d 103. Men typically carry what they use. We hold that the jury did not have to speculate to conclude Puckett knew about the methamphetamine. The conviction is therefore affirmed.

---

[4]A forensic chemist testified that the Tupperware container Detective Benham recovered from Puckett's pants pocket contained 5.4960 grams of methamphetamine.

[5]*Baker v. State*, 2019 Ark. App. 515, at 5, 588 S.W.3d 844, 848.

Affirmed.

KLAPPENBACH, C.J., and VIRDEN, J., agree.

*Nobles Law Firm, PLLC*, by: *Ethan C. Nobles*, for appellant.

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.