Cite as 2025 Ark. 213
# SUPREME COURT OF ARKANSAS
**No.** CR–24–827

| | | |
|---|---|---|
| REGGIE MATTHEWS | | **Opinion Delivered:** December 11, 2025 |
| | APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT [NO. 47OCR-23-214] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE DAN RITCHEY, JUDGE |
| | APPELLEE | <u>AFFIRMED</u>. |

**NICHOLAS J. BRONNI, Associate Justice**

Reggie Matthews appeals his capital-murder conviction for killing Tiana Robinson. Matthews and Robinson were involved in an abusive relationship, and on September 6, 2023, Matthews killed Robinson at a well-attended barbecue in Osceola, Arkansas. At Matthews's trial, multiple witnesses identified Matthews as Robinson's killer and testified that they saw Matthews chase Robinson, shoot her multiple times, and taunt her as she lay dying. Matthews was sentenced to life in prison.

Matthews seeks reversal on four meritless grounds. First, he argues that there was insufficient evidence to convict him. Second, he argues that statements he made to police after invoking his right to counsel and then immediately expressing a willingness to answer questions should have been suppressed. Third, he argues that a witness's unsolicited statement that a bystander had identified Matthews as the shooter violated a pretrial order and should have resulted in a mistrial. And fourth, Matthews argues that allowing a police

officer to testify about an interrogation recording that was played for the jury violated the best-evidence rule.  We reject all four arguments and affirm.

## Facts and Background

A.  Matthews was married but began a relationship with Robinson more than a year before the murder.  The relationship was toxic, with Matthews exhibiting an escalating pattern of threatening behavior in the run-up to Robinson's murder.

For instance, a year before the murder, in September 2022, police were called to break up a loud argument between Matthews and Robinson over Matthews's refusal to return a key to Robinson's house.  Months later, in May 2023, police responded to an incident where Matthews refused to leave a party that Robinson was hosting; Matthews agreed to leave only after police warned him that he would be arrested for criminal trespass.  Then, a month prior to the murder, Robinson called 911 and described how Matthews—who was present and armed—was threatening to kill her.  The 911 operator also overheard Matthews threaten Robinson, but Matthews fled before the police arrived.  And two weeks before the murder, Robinson, emotionally distraught and fearing for her life, filed an affidavit with the Osceola Police Department.  Indeed, at trial, Robinson's roommate testified that during the period leading up to the murder, Robinson was living in fear.

Moreover, just two days before he killed Robinson, Matthews was spotted driving around her home.  Robinson called the police and told them she feared for her safety.  When police arrived, Matthews fled at a high speed and officers initiated a traffic stop, warning him that there had been complaints about his prowling around the neighborhood.

2

B.  On the evening of September 6, 2023, Robinson went to a barbecue at a friend's house in Osceola.  The barbecue was well attended, and four attendees would eventually testify and identify Matthews as Robinson's killer.  Just after 9:00 p.m., a neighbor's doorbell camera captured Matthews arriving and parking his car around the corner from the barbecue.  Matthews was then seen lurking behind a truck before making a beeline for Robinson.  Spotting Matthews, Robinson immediately attempted to run away, and Matthews pursued her, bumping into a witness.  Matthews attempted to grab Robinson, and when that attempt failed, he started shooting, hitting Robinson five times in the back.  Robinson then collapsed, and Matthews stood over and began taunting her.  Robinson died at the scene, and Matthews fled.

C.  Matthews was subsequently arrested and questioned.  After being informed of his constitutional rights, Matthews initially told the police that he did not want to answer questions without the assistance of counsel.  But as soon as the police acknowledged that request, Matthews immediately interjected and said that he would answer questions.  Matthews then made a series of recorded statements indicating that he wished he could go back in time and change things, expressing remorse for Robinson's three children, and blaming the police for Robinson's death.  That recording's audio quality is less than ideal.

D.  At trial, four eyewitnesses testified that Matthews had killed Robinson and described the scene at the barbecue.  Matthews's recorded statements to police were also admitted over his objection that they were obtained in violation of his right to counsel.  And the circuit court overruled a related objection that an officer's testimony about the interrogation "[was] not proper."

3

As relevant to this appeal, the jury also viewed police body-camera footage recorded in the aftermath of Robinson's murder. The circuit court barred the State from playing the audio associated with that footage, but it did allow an officer to testify and narrate the footage. During that testimony, the officer blurted out that a bystander had told him that Matthews was the shooter. Matthews moved for a mistrial, arguing the unsolicited statement violated the pretrial order barring the State from using the body-camera footage's audio. The circuit court denied that motion, but it did instruct the jury to disregard the officer's statement.

At the close of the State's case and again at the close of the trial, Matthews moved for a directed verdict on sufficiency grounds. The circuit court denied his requests, and the jury convicted Matthews of capital murder. He was sentenced to life without the possibility of parole. Matthews timely appeals.

Discussion

Matthews seeks reversal on sufficiency, suppression, and two evidentiary grounds. None of his arguments have any merit. We affirm his conviction and sentence.

*First*, Matthews argues that the verdict was not supported by sufficient evidence. He raises two different versions of this argument, claiming that (1) there was insufficient evidence to prove that he killed the victim with premeditation and deliberation; and (2) there was insufficient evidence to identify him as the murderer. He made the former argument in his directed-verdict motion at trial, but he did not make the second argument.

When a defendant raises a sufficiency challenge, we consider the evidence presented in the light most favorable to the verdict and we do not reweigh that evidence or substitute

4

our own judgment for the jury's. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In conducting that review, we ask whether substantial evidence supports the jury's judgment. *Jones v. State*, 269 Ark. 119, 120, 598 S.W.2d 748, 749 (1980); *accord McDaniels v. State*, 2025 Ark. 139, at 8, 720 S.W.3d 82, 88. Applying that standard, we conclude substantial evidence supports the jury's verdict.

Starting with premeditation and deliberation, we have previously explained that premeditation and deliberation can be formed in an instant and can be inferred from circumstantial evidence, such "as the character of the weapon used, the manner in which it is used, the nature, extent and location of the wounds inflicted, the conduct of the accused and the like." *Stout v. State*, 263 Ark. 355, 360, 565 S.W.2d 23, 26 (1978); *see also McDaniels*, 2025 Ark. 139, at 8, 720 S.W.3d at 88 (explaining a variety of circumstantial evidence from which a jury can infer premeditation and deliberation). Here, multiple witnesses testified that Matthews targeted Robinson at the barbecue, chased her down when she attempted to flee, tried to grab her, and then shot her five times in the back. Based on those facts alone, the jury could reasonably infer that Matthews acted with premeditation and deliberation.

Next, we likewise reject Matthews's argument that the State failed to provide sufficient evidence that Matthews was the person who murdered Robinson. Matthews did not make this argument in his directed-verdict motion, and it is not preserved for review. *See McDaniels*, 2025 Ark. 139, at 6–7, 720 S.W.3d at 87 (discussing preservation under Rule of Criminal Procedure 33.1). As such, we do not reach Matthews's identification argument and we reject his sufficiency challenge.

*Second*, Matthews argues that his statements to police after his arrest should have been suppressed.  It is undisputed that during his interaction with police, Matthews stated he wanted a lawyer and that the police acknowledged that request.  Under normal circumstances, that would be the end of the matter, and any further statement would be inadmissible.  *See Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981); *Miranda v. Arizona*, 384 U.S. 436, 473–74 (1966).

Yet that was not the end of the interaction here.  Instead, as soon as the police acknowledged Matthews's invocation of his right to counsel, Matthews interjected and continued the conversation, expressing a willingness to answer some questions.  That changes the calculation because the general rule does not apply when the accused "initiates further communication, exchanges, or conversations with the police" and expresses a willingness to talk.  *Edwards*, 451 U.S. at 484–85.  And as a result, there was nothing problematic—constitutionally or otherwise—with the State's use of Matthews's subsequent, voluntary statements at trial.

*Third*, Matthews argues that the circuit court should have declared a mistrial in response to a police officer's statement that a bystander had told him that Matthews was the shooter.  In particular, he argues that the officer's blurted statement violated a pretrial order requiring the State to remove audio from police body-camera footage that was being played during the officer's testimony.  When Matthews objected to the comment and asked for a mistrial, the circuit court denied the mistrial request and instructed the jury to disregard the comment.  The circuit court did not abuse its discretion in denying Matthews's request.

When a witness makes an unsolicited comment that violates a pretrial order, a curative instruction is generally a sufficient remedy. *King v. State*, 847 Ark. 89, 94–95, 847 S.W.2d 37, 40–41 (1993). A mistrial is generally only appropriate when a less drastic remedy, like as a curative instruction, cannot correct an error. *Id.* at 95, 847 S.W.2d at 40. Applying that rule here, the circuit court did not abuse its discretion because the officer's comment was unsolicited and Matthews does not point to anything to suggest that the comment was so impactful or so egregious that a mistrial was the only potential remedy. Far from it, it is difficult to see how a stray comment that someone identified Matthews as the shooter—and that the circuit court instructed the jury to disregard—could have been so impactful that it warranted a mistrial since four eyewitnesses testified to the same fact. Consequently, we reject Matthews's argument that he was entitled to a mistrial.

*Fourth*, and finally, Matthews argues that the circuit court violated Arkansas Rule of Evidence 1002—more commonly known as the best-evidence rule—when it allowed a police officer to testify about Matthews's interrogation. It is unclear whether Matthews's argument is preserved because he did not clearly make a best-evidence-rule argument at trial. Rather, he simply asserted that allowing the officer to testify and attempt to clarify what was said on a poor-quality recording "[was] not proper." But even if Matthews's objection is properly preserved, it is meritless.

The best-evidence rule is relevant only when a party attempts to prove the content of a writing, recording, or photograph without that item. Here, the State played the recording at issue—the best evidence—for the jury, and because the audio recording was poor, it also had an officer testify about the interrogation. That did not violate the best-

7

evidence rule. Nothing in the best-evidence rule prevents a party from testifying about the contents of a recording, so long as that recording itself is admitted. Moreover, to the extent that Matthews means to imply the officer's testimony was inadmissible hearsay, his repetition of Matthews's statements easily qualifies as an admission under Ark. R. Evid. 801(d)(2)(A). So, as above, we reject Matthews's argument.

Affirmed.

BAKER, C.J., and WEBB, J., concur.

**KAREN R. BAKER, Chief Justice, concurring**. While I agree with the majority's decision to affirm Matthews's capital-murder conviction, I must write separately to emphasize our complete sufficiency-of-the-evidence standard of review. Citing to a federal case concerning the proper standard to be applied in a federal habeas corpus proceeding when a person claims that he or she has been convicted in a state court upon insufficient evidence, the majority states that "[w]hen a defendant raises a sufficiency challenge, we consider the evidence presented in the light most favorable to the verdict and we do not reweigh that evidence or substitute our own judgment for the jury's." *See Jackson v. Virginia*, 443 U.S. 307 (1979). However, this is an incomplete rendering of our standard. For over forty years, this court has consistently held that in reviewing whether substantial evidence supports a verdict on direct appeal, while we view the evidence in the light most favorable to the State, we do so upon a consideration of *only the evidence that supports the verdict. See, e.g., McDaniels v. State*, 2025 Ark. 139, at 8, 720 S.W.3d 82, 88; *Brown v. State*, 2025 Ark. 147, at 4, 720 S.W.3d 102, 104; *Clevenger v. State*, 2025 Ark. 128, at 6, 719 S.W.3d 453, 459; *Wofford v. State*, 2023 Ark. 138, at 4, 675 S.W.3d 137, 139; *Cone v. State*, 2022 Ark.

8

201, at 7, 654 S.W.3d 648, 655; *Meadows v. State*, 2012 Ark. 57, at 5, 386 S.W.3d 470, 475; *Zachary v. State*, 358 Ark. 174, 176, 188 S.W.3d 917, 919 (2004); *Reinert v. State*, 348 Ark. 1, 6, 71 S.W.3d 52, 55 (2002); *Williams v. State*, 329 Ark. 8, 16, 946 S.W.2d 678, 682 (1997); *Edwards v. State*, 300 Ark. 4, 8, 775 S.W.2d 900, 903 (1989); *Brown v. State*, 278 Ark. 604, 605, 648 S.W.2d 67, 68 (1983). For decades, we have been deliberate in adhering to our complete sufficiency-of-the-evidence standard that limits the court's appellate review to only the evidence that supports the verdict, and we must be careful not to stray from our longstanding precedent until it gives a result that is so patently wrong or manifestly unjust that a break becomes unavoidable. *Hervey v. State*, 2011 Ark. 113. Indeed, even the casual omission of one piece of a whole legal standard has the potential to lead to unforeseen consequences and unnecessary confusion.

Accordingly, I must concur.

WEBB, J., joins.


*Erin W. Lewis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., for appellee.