Cite as 2026 Ark. App. 122

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CR–25–195

|  |  |
|---|---|
| JAMES SYDNEY HUMES<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** February 25, 2026<br><br>APPEAL FROM THE LAWRENCE COUNTY CIRCUIT COURT<br>[NO. 38CR–21–6]<br><br>HONORABLE ROB RATTON, JUDGE<br><br>AFFIRMED |

### BRANDON J. HARRISON, Judge

James Sydney Humes appeals the sufficiency of evidence supporting his conviction by a Lawrence County jury of committing Class Y rape on or about 23 May 2020, when he was twenty-five years old and the minor victim (MV) was thirteen. The State argues he did not preserve his challenge; we affirm on the merits.

Humes was a friend of MV's family. He lived in Black Rock next to his aunt Shannon Delmonte, one of MV's mother's best friends. Delmonte's sons went to school with MV. It was Memorial Day weekend. Delmonte's family had plans to go camping and boating on the Black River. MV stayed the night with them Friday so she could go along the next day. Shortly before they left on Saturday, MV went to Humes's trailer with Delmonte's sons. Delmonte noticed her sons had come back alone. She testified that MV was alone at Humes's trailer for at least fifteen or twenty minutes; they picked her up there on the way to the river.

That weekend, Delmonte said, MV was "very clammy to" Humes. "She wanted to be on the boat with him, she wanted to be in the tent with him." At one point, she had to pull MV out of the tent. She had heard phone conversations between Humes and MV as well. She had worried about their closeness.

So had Jennifer Thompson, MV's mother. She had noticed MV and Humes were talking on the phone and texting each other—"getting too close." In response, she had grounded MV from going to Delmonte's and taken her phone away for as long as a week.

About a week after the river trip, Thompson went into MV's bedroom early one morning and noticed a glow from her phone, which looked like it had fallen out of MV's hand. Thompson said it was "open to a certain name" that gave her a bad feeling, something like "Best Friend Squidpants." She read the messages. When MV woke up, Thompson drove her to Delmonte's workplace, because she "knew Shannon could get [answers] out of her she wouldn't give me."

After some hearsay exchanges the parties avoided at trial, Thompson asked MV, "[I]f I take you to a doctor's office right now, are they going to find out that you've had sex with somebody?" After hearing her answer, they drove her to the Walnut Ridge Police Department. MV did not want to be there. A photo taken that morning in front of the police station shows her scowling at the camera with her arms crossed. "I was mad," she confirmed.

MV told the jury she'd had a crush on Humes. They had been talking on Snapchat. He had sent her a "dick pic" and other inappropriate messages. She changed his Snapchat

2

handle (to "Squidpants or something") and deleted their messages so her mother couldn't read them.

Though MV was eighteen when she testified, she was just shy of fourteen on 23 May 2020 when the rape occurred. She told the jury that she had gone to Humes's trailer around noon to use his bathroom. When she finished and opened the bathroom door, he was standing in the doorway in his swim trunks. He asked if she wanted to have sex. MV responded, "No, not really"—then, that if he wanted that, he would have to pull her pants down. Humes did so. He pulled his swim trunks down as well. He had a condom on his penis already, she said. She testified that Humes then "had sex with [her],"—specifically, he "inserted it into [her] vagina." They "proceeded to have sex" for about ten minutes. He told her not to scratch his back so no one at the river would see. Afterward, he told her not to tell anyone.

Humes argues on appeal, as he did in his motions for directed verdict, that the State failed to produce sufficient evidence that he had sexual intercourse with MV. "Sexual intercourse" is an element of rape defined as "penetration, however slight, of the labia majora by a penis." Ark. Code Ann. §§ 5-14-103(a)(3)(A) (Supp. 2019) & –101(12) (Supp. 2019) (defining "sexual intercourse"). Indeed, he argues MV's testimony was not sufficient evidence of *any* sexual activity in the circumstances. There was no medical testimony, and despite a forensic search of MV's phone, the State produced no communications with her, incriminating or not. Further, MV admitted that the account she gave police contained lies—in fact, nothing but lies except for the act she testified to at trial. She said that she had

3

changed some details about how it occurred when she spoke to the police because she thought if it sounded more consensual Humes wouldn't get in trouble.

We find no merit in either Humes's general or specific challenge to the jury's verdict. A motion for directed verdict challenges the sufficiency of the evidence. *McClendon v. State*, 2019 Ark. 88, 570 S.W.3d 450. On appellate review, we view the evidence in the light most favorable to the State. We affirm if the evidence was of sufficient force and character to compel a conclusion of guilt without the need to resort to speculation or conjecture.[1] Evaluating the credibility of witnesses and resolving inconsistencies in the evidence is the jury's role, not ours. *Hartley v. State*, 2022 Ark. 197, 654 S.W.3d 802; *Breeden v. State*, 2013 Ark. 145, 427 S.W.3d 5. Having reviewed the entire record, and respecting the jury's premier role as we must, we affirm the conviction.

Affirmed.

VIRDEN and BARRETT, JJ., agree.

*Ben Bristow*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Vada Berger*, Sr. Ass't Att'y Gen., for appellee.

---

[1]Following our supreme court's lead, we have restricted our consideration in this criminal sufficiency-of-evidence appeal to evidence that tended to support the conviction. *E.g.*, *Puckett v. State*, 2025 Ark. App. 101. Our supreme court's most recent decisions in this area have omitted that express restriction. *Compare Matthews v. State*, 2025 Ark. 213, at 4–5, 725 S.W.3d 16, 19 (citing *Jones v. State*, 269 Ark. 119, 598 S.W.2d 748 (1980), and *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)), *with Matthews*, 2025 Ark. 213, at 8, 725 S.W.3d at 21 (Baker, C.J., concurring) (objecting that the majority omitted the restriction from the standard of review); *see also Reaves v. State*, 2025 Ark. 202, 725 S.W.3d 22 (omitting the same restriction the same day); *Tait v. State*, 2026 Ark. 28 (omitting it since). Because the outcome in this appeal is the same whether we look at all the evidence or some of it, here we merely note the issue.