SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR–13–537

|  |  |  |
|---|---|---|
| KHALIN COLLINS | | **Opinion Delivered** October 22, 2014 |
| | APPELLANT | APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT [NO. CR–2010–191-5] |
| V. | | |
| | | HONORABLE LARRY CHANDLER, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED IN PART; REVERSED IN PART |

**ROBERT J. GLADWIN, Chief Judge**

Khalin Collins was convicted in the Columbia County Circuit Court of three counts

of arson and one count each of commercial burglary and theft of property over $2500. On

appeal, Collins challenges the sufficiency of evidence corroborating the accomplice testimony

as to all charges.[1] We affirm on all counts except the conviction related to the Summit Bank

arson, which we reverse.

## I. *Facts*

Collins was charged by criminal information with committing arson as an accomplice

on July 20, 2009, at Summit Bank, and committing two counts of arson as an accomplice at

Walgreens and People's Bank, commercial burglary, and theft of property over $2500 at

---

[1]This appeal reaches us for the second time after rebriefing was ordered due to inadequacies in appellant's abstract and addendum, which have now been corrected. *Collins v. State*, 2014 Ark. App. 371.

Prince's Pharmacy on July 30, 2009. At trial, officer John Ferguson testified that he was called to Walgreens on July 30, 2009, where a fire had been deliberately set. A burglary had also been reported at Steve's Marine, where the front-door glass had been broken by a piece of concrete found lying inside the door. Officer Jeremy Criss also responded to the fire that night and saw fire on the glass of the drive-through pharmacy at Walgreens. The fire was contained to the outside of the store. He found glass on the ground that did not match the store's glass and observed a cloth and the smell of gasoline.

Laci Collier testified that she was a friend of Collins's and had been to his house. She said that she had seen Keon Henry, Booney,[2] Deezy,[3] and Gary Ellis at Collins's house during the summer and fall of 2009. She said that sometime between May and September 2004 she, Collins, and Deezy drove to Florida in her car to move Collins's belongings.

Lindsey Cook testified that she was Ellis's girlfriend and knew Collins, Booney, and Henry, but did not know Deezy well. She said that at one time Ellis lived with Collins. She stated that on July 30, 2009, she stayed the night at Collins's place and that Collins's girlfriend stayed too. She said that Ellis borrowed her car that night. She further said that, prior to that night, she overheard Collins, Henry, and others talk about breaking into a pharmacy. She was not awake when they left the house, and when she woke up the next morning, there were some guys asleep on the couch and there were black trash bags all over the floor. Some of the bags had "stuff" in them, but she did not know what. On cross-examination, she

---

[2]Tamarus Hardwell

[3]Arlando Wyrick



admitted that she did not know if Ellis borrowed her car that night because she was asleep. On redirect, she said that Ellis had a deep cut on his arm on the same day that she read in the newspaper "about what happened in town."

Officer Todd Dew explained that Derek Walters contacted him with information regarding Collins, so he drove to Florida to interview Walters and his common-law wife, Stephanie Thompson. Walters testified at trial that he met Collins a few years ago and their relationship was that "we would do small personal business, favors." Through Collins, Walters met Booney. Walters claimed that Collins accused Booney of stealing pills from him, so Walters beat Booney up. Walters said that he and Collins got "crossways" over Collins's truck. Collins had parked his Yukon in front of Walters's house, and Walters asked for payment in exchange for allowing the truck to remain, and Collins eventually offered him steroids for payment. When Collins later went to jail, Walters got rid of the truck and was arrested and charged for doing so. Walters said that the case regarding the truck was still pending.

Walters testified that he told Officer Dew that Collins told him that

the pharmacy was the thing where they was planning it, all the guys involved got scared of it and he was the key of the show and he went in and did what he had to do. That's why he don't want to spread the stuff equal amongst people. One of the first things he told me was he was saying that the case took place, explained they had a lot of decoy work or some stuff. Then Booney messed around and messed up some stuff and he had to get onto him . . . he did explain about the pharmacy's been broken into all this and how he wanted to kick Booney's butt because he messed up with the thing, threw the gas bottle into the place and all that. He was ticked off about stuff going bad and he needed somebody to come in and help him with what was going on.

Walters admitted that he was a convicted felon, having served four months on a probation violation for possession of cocaine in 2000, as well as seven months' incarceration from March 2011 until January 2012. He also stated as follows:

> I talked to Khalin [Collins], that dude Gary [Ellis] was a witness, was a problem, and he wanted me to take care of it before his court date in April. Booney was there for that conversation. The first time I was going to get $10,000. . . . I was offered twenty grand the second time.

Stephanie Thompson testified that she heard Collins talking about robbing a pharmacy and getting pills into Florida. She thought they were just talking, but changed her mind when she heard Collins ask Walters if he would kill Gary Ellis for $10,000.

Deezy testified that he was arrested in this matter, admitting that he set fires in 2009. He claimed that he was with Collins, Ellis, and Booney, and as part of the plan, he went to Walgreens and set a fire. He testified that they went in two vehicles and that he was the lookout man. He said that Collins and Ellis dropped him off at Walgreens, and Collins gave him the brick and bottle of gasoline that he threw through the window. Deezy explained that after he threw the brick and the bottle, he ran through the woods and met with his friends at the tire place. They went back and met at Eastside Park, then went to the pharmacy. He said that Henry threw a brick through Steve's Marine to throw the police off. He said that he was the lookout at the stop sign and did not go into the pharmacy. He did clean up the blood where Ellis had gotten hurt at the front door of the pharmacy. He said the others went into the pharmacy and came out with pills in black bags, and they all went back home. He said that Collins split "it" at his house, and for his part, Deezy got some pills, which he either sold or gave away. He said that he went to Florida with Laci Collier and

4

Collins about two weeks after setting fire to Walgreens. He stayed in Florida almost two years. He also said that he had met Derek Walters while in Florida and saw Walters "jump" Booney at Collins's house because Booney had stolen pills from Collins. He denied any involvement in the Summit Bank arson on July 20, 2009.

Samantha Bisswanger testified that she met Collins in 2009 and spent some time at his trailer then. She said Collins borrowed her car sometimes, and many times the guys would all leave the trailer and would take her car. She said Collins admitted to doing illegal things in her vehicle and that he was a thief. She said Collins told her that his goal in life was to rob a bank.

Detective Sergeant Michael Caldwell testified that he was the chief investigating officer in the Walgreens, Steve's Marine, and Prince's Pharmacy cases. He testified that he found blood in front of Prince's Pharmacy, which later was determined to belong to Ellis. Based on that match, police obtained a warrant and arrested Ellis, interviewing him at length. From Ellis, the others involved were identified as Collins, Henry, Deezy, and Booney. Ellis told police that Walgreens, Steve's Marine, and People's Bank were all used as a diversion for the burglary at Prince's Pharmacy. Caldwell described items used to commit the arsons as well as the burglary and theft, including a hammer and a tire iron found inside Prince's Pharmacy. Ellis admitted to police that he used the hammer on the pharmacy door and identified the tire iron as the one used by Collins during the break-in.

Caldwell testified that, while investigating the July 30, 2009 crimes, he found similarities with a fire that had occurred ten days prior at Summit Bank. The window had

been broken with a brick on the north side of the building and there was a bottle located inside that was believed to contain gasoline. No identifiable fingerprints were taken from the evidence recovered.

Booney testified that he was supposed to have set the fire at Summit Bank for a diversion, as well as the fire at People's Bank. He said that Collins came to him with the proposition of breaking into the pharmacy. He said that he got the bottle he used for the fire from Collins's house. He explained that the bottle bounced back on him when he threw it at the bank and that he caught fire. However, after the fire had been set at Summit Bank, Collins made the decision not to go "do" the pharmacy. He said he also started the fire at People's Bank, which actually did catch fire, and that Collins drove him both times. Collins provided walkie-talkies for the July 30 crimes, and instructed Booney on the plan.

Gary Ellis testified that he was friends with Collins, Henry, Booney and Deezy. He admitted that he was charged with burglary and theft, but was not charged in the arsons. He also admitted that he was on probation for aggravated assault. Ellis said that Lindsey Cook was his girlfriend and that they were living together in 2009. He admitted to going to Prince's Pharmacy, throwing a hammer through the door, and cutting his arm on the glass. He said that he went back to the car and did not go into the pharmacy. He denied having anything to do with the fires at Summit Bank, People's Bank, or Walgreens, and denied throwing anything through the window at Steve's Marine.

Ellis explained that they planned the crimes to cause a diversion for the robbery of Prince's Pharmacy. He said that he did not know what happened at Summit Bank, but

6

remembered dropping Booney off. He was in the car with Collins, Booney, and Deezy. He said Collins drove that night and that he had prepared the bottles. The plan was for Booney to throw the bottle through the window and set it on fire, then they would go to Prince's Pharmacy. However, they did not follow through with the pharmacy that night.

Ellis said that he was involved in the planning of the robbery, and he and Collins went down to Dr. Beene's office and saw that there was a trail, walked the trail, and came back. On the night of July 30, 2009, he, Collins, Booney, Deezy, and Henry talked about what was going on and how they were going to do it. He drove Lindsey's car and Collins drove Sam's car. They left the girls asleep at the trailer. They first went to Eastside Park, then went to People's Bank and dropped Booney off near the carwash. They then dropped Deezy off at Walgreens and drove back to pick up Booney. He said something had gone wrong at People's Bank because when Booney tried to throw the bottle through the window, it ricocheted back on him, splashed him, and burned his clothes. He said that Collins "dogged" him for not being able to get the bottle through the window. He also said that the fire did not really "work" at Walgreens either because the fire was "amongst" the glass.

Ellis said the group then went to Steve's Marine, and Henry got out of the car with a brick and, Ellis assumed, threw the brick. They met Henry on the next road up and went back to Eastside Park to get the other car. They drove to Dr. Beene's office after having dropped off Deezy and Booney as lookouts with walkie-talkies. He, Collins, and Henry took the trail behind the doctor's office that led to Prince's Pharmacy, and Ellis stepped up

to break the window, but the glass did not fully break. Glass then came down on his arm, and he went back to the car. He had bled a lot at the scene and did not want to leave his blood there; so, after everyone got the pills, they "went to this place over close by, we dropped all the pills off, and while we were over there we got some bottles out of the car" and filled them with water, went back to the pharmacy and poured it over the blood at the scene. He explained that he used the hammer when he had broken the window at the pharmacy, and someone else used the tire iron. When they got back to Collins's house, it was daylight and no one was up yet. He bandaged his arm and went to sleep. He remembered looking through the bags at some point and seeing "hydros" and Xanax. A month or two later, Collins went to Florida. He also remembered that Henry was not satisfied with his portion of the pills, and at one point, police came to the house to talk to Collins and Henry. He said that after Collins moved to Florida, he heard Collins had put a hit out on him, and he does not consider Collins a friend.

Officer Koby Schmittou testified that he investigated the break-in at Steve's Marine and also dealt with Collins and Henry in September 2009. He explained that Collins reported that Henry had stolen his property and threatened to kill Collins and his family because of a dispute over money.

Keon Henry testified that he had been in trouble in the past and was on probation for a firearm violation. He said that he had been charged with the incidents at Walgreens, People's Bank, and Prince's Pharmacy. He denied involvement with the Summit Bank fire, but admitted being involved with the others and Steve's Marine. He said that Collins had

been calling him for a year to talk about robbing a pharmacy, and one night he went to Collins's house, and they formulated a plan. He reiterated Ellis's testimony regarding Deezy's and Booney's roles, and stated that Ellis got cut at the pharmacy and did not go in. He said that it was his idea to throw a rock at the front glass of Steve's Marine. He said that Ellis cut his arm on the glass at Prince's Pharmacy, so he and Collins went into the pharmacy. Collins used a tire tool to get through the second door at the pharmacy, and when they got in, Collins gave him a trash bag and pointed out the pills for him to collect. He said they took the bags to a drop-off point so the drugs would not be in the vehicle, and they went to clean up the blood in front of the pharmacy. When they returned to Collins's house, Henry did not stay, but went back after work that evening and collected his pills. Henry said he thought he was not given his fair portion of pills.

Jonathan Brooks testified that he remembered going to Collins's house on August 16, 2009, because he got a traffic ticket on the way. He obtained Xanax pills from Collins that day. In the months prior, he had seen Henry, Ellis, Booney, and Deezy there. He had also seen Sammi Bisswanger and Lindsey Cook there.

James Waller testified that he worked for People's Bank. He said that the July 30, 2009 arson caused $3500 in damage. Caleb Hawkins testified that he is the Walgreens manager and that he was notified when the alarm sounded. The total damage to the facility was $3224.27. Jeff Prince testified that he owns Prince Pharmacy, and the damage to his business cost $450-$470, and the value of the pills stolen was about $12,000.

9

Greg Pinner, fire chief for the Magnolia Fire Department, testified that the fire at Summit Bank was caused by someone having thrown a brick and then a bottle with gasoline through the window. The damage total was $177,608. He also investigated the Walgreens fire and opined that arson was the cause. Finally, he said that the fire at People's Bank was also caused by a bottle being thrown at the window, although it did not go through.

The trial court denied Collins's motion for directed verdict, wherein he argued that there was insufficient corroboration of accomplice testimony related to each count.

Reba Collins testified that she is Collins's grandmother and that Henry told her that he had committed the crimes and that her grandson did not. Officer Caldwell testified and admitted losing the handwritten "grocery" list found at Prince Pharmacy, but that no handwriting analysis had been done on it. He said that in Ellis's first police interview, he did not say that Collins was there at all, and Ellis later said that Collins was involved. Officer Caldwell testified that there was no forensic or trace evidence tying Collins to any of these crimes. Finally, Bobby Collins testified that Khalin Collins was his nephew and that, when Ellis was "put out" of the trailer, Khalin Collins began living in it, and Ellis was not happy about that.

Collins moved for directed verdict, again arguing that there was insufficient corroboration on all counts, especially the July 20, 2009 arson. The trial court denied that motion, and Collins was convicted on all counts and sentenced to ninety years' imprisonment. This appeal timely followed.

10

 

## II.  *Applicable Law*

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Smoak v. State*, 2011 Ark. 529, 385 S.W.3d 257. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Anderson v. State*, 2011 Ark. 461, 385 S.W.3d 214. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Camp v. State*, 2011 Ark. 155, 381 S.W.3d 11. On appeal, we review the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Williams v. State*, 2011 Ark. 432, 385 S.W.3d 157.

> When accomplice testimony is considered in reaching a verdict, Arkansas law provides that a person cannot be convicted based on the testimony of an accomplice "unless corroborated by other evidence tending to connect the defendant . . . with the commission of the offense." Ark. Code Ann. § 16-89–111(e)(1)(A) (Repl. 2005). Corroboration must be evidence of a substantive nature, since it must be directed toward proving the connection of the accused with the crime, and not directed toward corroborating the accomplice's testimony. *Camp v. State*, *supra*. Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *Id*. Rather, it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. *MacKool v. State*, 365 Ark. 416, 231 S.W.3d 676 (2006). The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the remaining evidence independently establishes the crime and tends to connect the accused with its commission. *Id*. The presence of an accused in the proximity of a crime, opportunity, and association with a person involved in a crime in a manner suggestive of joint participation, are relevant factors in determining the connection of an accomplice with the crime. *Parker v. State*, 355 Ark. 639, 144 S.W.3d 270 (2004) (quoting *Andrews v. State*, 344 Ark. 606, 613–14, 42 S.W.3d 484, 489 (2001)).

*Meadows v. State*, 2012 Ark. 57, at 6, 386 S.W.3d 470, 475.

SLIP OPINION

### III. *Discussion*

Collins argues that the trial court erred in denying his motions for directed verdict because there was insufficient evidence to corroborate the accomplice testimony on all counts.[4] Collins reviews the testimony of each accomplice and corroborating witness. He contends that the corroborating witnesses' statements are vague, uncertain, and made by persons of bias or prejudice. He contends that no witnesses other than accomplices spoke to the July 20, 2009 Summit Bank arson. He acknowledges the similarity in the Summit Bank arson and the crimes occurring on July 30, 2009, and that he sometimes associates with the accomplices. He argues that there is nothing to connect him to this crime besides accomplice testimony other than suspicion and conjecture. Collins claims that the July 30, 2009 crimes are also lacking corroboration for the accomplices' testimony, and stresses that there is no forensic or trace evidence connecting him to the crimes.

The State contends that the accomplices' testimony was sufficiently corroborated. The State claims that the accomplices testified that Collins came up with the idea of using the fire bombings of Walgreens and People's Bank and the attack on Steve's Marine to divert the police away from their true target, Prince's Pharmacy. The accomplices said that Collins was the person who assigned them their roles and gave them instructions and materials to carry out their roles. One accomplice testified that he moved with Collins to Florida, and that they "took all kinds of pills from Prince's Pharmacy."

---

[4]Even though Collins sets forth two points on appeal, separating the July 20, 2009 Summit Bank arson in Point I from the other charges in Point II, both arguments are identical but for one or two paragraphs; therefore, these points will be addressed together.

The State argues that corroborating witnesses establish the crimes at Walgreens and People's Bank, and connect Collins to those crimes. Apart from accomplice testimony, the State argues that there is evidence that establishes the crimes and tends to connect appellant to them. First, Collins was convicted of commercial burglary of Prince's Pharmacy and theft of property for the drugs stolen, and the State contends that the facts and circumstances of those crimes, along with the break-in at Steve's Marine,[5] corroborates the accomplices' testimony that the pharmacy was the target and the arsons were used as decoys. Second, Collins confessed to Derek Walters, and Stephanie Thompson overheard the confession. Third, Lindsey Cook testified that she overheard Collins, Henry, and others talking about robbing a pharmacy before the break-in occurred. She also testified that she spent the night at Collins's trailer on July 30, 2009; that she thought that Collins borrowed her car that night; that Ellis, Henry, and Booney spent the night at Collins's trailer that night; the next morning, there were black trash bags scattered about the trailer; and Ellis had a cut on his arm the day after the arsons. Fourth, the physical evidence of the damages to the varying properties, as well as the hammer, tire iron, and concrete chunks, corroborate the accomplices' testimony. The State claims that this independent evidence of the crimes tends to connect Collins to the arsons. Finally, the State contends that Collins's behavior after the crimes—arranging for Walters's assault of Henry, and offering to pay Walters to kill Ellis—provide additional corroboration of the arsons. We agree and affirm those convictions.

---

[5]Collins was not charged in connection to the break-in at Steve's Marine.

13

The State contends that the corroborating evidence connecting Collins to the Summit Bank arson is the physical damage to the bank and the evidence police recovered from the crime scene. The State contends that this is independent of the accomplices' testimony, establishes the crime, and tends to connect Collins to it. The State also claims that Collins's offer of $10,000 to Walters to kill Ellis tends to connect Collins to the Summit Bank arson because Ellis was a witness to the earlier arson.

Collins contests this assertion by the State, claiming that the above evidence establishes the crime and that the accomplices committed the crimes. We agree. These matters do nothing to connect Collins to the crimes. Ellis testified that on July 20, 2009, they did not follow through with Prince's Pharmacy because he "just wasn't comfortable going through in pulling it that night." Also, Walters's testimony was incoherent in regard to Summit Bank. Accordingly, we reverse Collins's conviction for the arson of Summit Bank.

Affirmed in part; reversed in part.

PITTMAN and WYNNE, JJ., agree.

*James B. Bennett*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.