

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-16-372

| | |
|---|---|
| ROBERT THOMAS DARK<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** November 1, 2017<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-14-694]<br><br>HONORABLE MARCIA R. HEARNSBERGER, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Robert Thomas Dark was convicted by a Garland County jury of possession of a controlled substance and sentenced as a habitual offender to fifteen years' imprisonment and ordered to pay a $10,000 fine.[1] He raises four points on appeal: (1) the State failed to prove that he possessed a "useable" amount of a controlled substance, (2) the trial court abused its discretion using its local rule to cut off plea negotiations, (3) the trial court erred in denying his motion for a continuance and "in coercing him to accept appointed counsel," and (4) the trial court erred by failing to order a fitness-to-proceed examination. We affirm.

---

[1]In *Dark v. State*, 2017 Ark. App. 3, we denied counsel's motion to withdraw and ordered rebriefing. The case is back before us as a merit appeal.

I. *Trial Testimony – December 7, 2015*

Officer Brent Scrimshire with the Hot Springs Police Department testified that he assisted on a stolen-vehicle report and identified Dark as a passenger in that vehicle. An ACIC (Arkansas Crime Information Center) check revealed that Dark had a warrant. Officer Scrimshire patted him down for weapons and found none. The officer then asked Dark whether he had anything else on him, and Dark said that he had a small baggie in his pocket. The baggie contained a crystal-like substance, which field tested positive for methamphetamine.

Nick Dawson, a drug chemist at the Arkansas State Crime Lab, testified that the test sample's total net weight was .3541 grams, and he confirmed that it was methamphetamine and dimethyl sulfone.

II. *Discussion*

A. Sufficiency of the Evidence

Arkansas Code Annotated section 5-64-419(a) (Repl. 2016) provides that, except as provided by this chapter, it is unlawful for a person to possess a controlled substance. A person who violates this section with respect to a Schedule I or Schedule II controlled substance that is methamphetamine or cocaine with an aggregate weight, including an adulterant or diluent, of less than two grams upon conviction is guilty of a Class D felony. Ark. Code Ann. § 5-64-419(b)(1)(A).

Dark argues that, because no test was performed to determine what percentage of the sample weighing .3541 grams was methamphetamine, as opposed to the cutting agent, the State failed to prove that he possessed a useable amount of methamphetamine. Dark

relies on *Harbison v. State*, 302 Ark. 315, 790 S.W.2d 146 (1990), in which our supreme court reversed the appellant's possession-of-cocaine conviction because a bottle found in his possession contained "less than a useable amount of cocaine."

Arkansas Rule of Criminal Procedure 33.1(a) provides that a motion for directed verdict in a jury trial must be made at the close of the State's evidence and at the close of all the evidence, and it must specify the respect in which the evidence is deficient. *Campbell v. State*, 2017 Ark. App. 59, 512 S.W.3d 663. After the State rested in this case, the trial court asked defense counsel whether he had any motions to make and was told, "No, I don't believe the record supports any motions for directed verdict or otherwise." Because Dark made no directed-verdict motion below, his challenge to the sufficiency of the evidence is not preserved for review. *Swanigan v. State*, 2016 Ark. App. 15.

### B. "Local Rule"

Initially, the State offered Dark three years in exchange for his guilty plea. He rejected that offer. Later, the State offered Dark ten years, but he rejected that offer as well. At a pretrial hearing on November 18, 2015, the trial court said, "There will be no other plea offers after today." Dark said that he wished to plead guilty and completed the necessary paperwork; however, Dark ultimately said that he would plead not guilty.

On December 7, 2015, the day of trial, Dark asked the trial court in chambers whether DCC (Department of Community Correction) was "off the table." Defense counsel referred to the judge's "policies" and how they were to be followed regarding the "cut-off point" with plea negotiations. Dark explained that he had gotten "shaken" and

"rattled" and, "out of [his] panic," had said, "Not guilty" at the pretrial hearing on November 18.

Dark argues on appeal that the trial court's "local rule" regarding plea negotiations is the type of rule abolished by the Arkansas Supreme Court's per curiam decision dated December 21, 1987. *In re Changes to the Ark. Rules of Civil Procedure*, 294 Ark. 664, 742 S.W.2d 551 (1987) (per curiam). Although Dark claims that he suffered prejudice by the trial court's "refusal to allow a plea bargain," the facts do not support that assertion.

Assuming this was a local rule, as opposed to the trial court's simple exercise of control over its courtroom and docket, the judge considered paperwork handed to her by defense counsel on the day of trial indicating that Dark wished to admit to the charge and to his habitual-offender status. After some colloquy, the judge said, "I've asked you this question, now this is the third time I've asked you the question and I won't ask it again. Do you wish to plead guilty?" Dark responded, "No, I don't." Dark cannot demonstrate prejudice because the trial court considered plea negotiations right up to the start of the trial, but Dark refused the last-minute plea offer and chose to go to trial. We find no reversible error.

### C. Continuance and Coercion

The refusal to grant a continuance in order for the defendant to change attorneys rests within the sound discretion of the trial court. *Alexander v. State*, 55 Ark. App. 148, 934 S.W.2d 927 (1996). Moreover, the right to counsel of one's choice is not absolute; if change of counsel would require postponement of trial because of inadequate time for a new attorney to properly prepare a defendant's case, the court may consider, in granting or

denying the change, such factors as the reasons for the change, whether other counsel has already been identified, whether the defendant acted diligently in seeking the change, and whether the denial is likely to result in any prejudice to the defendant. *Id.* On appeal, we review the denial of a motion for continuance under an abuse-of-discretion standard. *Creed v. State*, 372 Ark. 221, 273 S.W.3d 494 (2008). An appellant must demonstrate not only that the trial court abused its discretion in deciding the motion but also that the ruling resulted in prejudice amounting to a denial of justice. *Id.*

Dark argues that the trial court summarily denied his motion for a continuance without any consideration of the relevant factors. He contends that he was thus given no opportunity to articulate the reasons a continuance was warranted. Dark further argues that, despite his insistence on representing himself, the trial court "coerced [him] into continued representation by his trial counsel."

On the morning of trial, defense counsel informed the trial court that Dark wished to discharge him and represent himself. Dark said, "I would beg for the Court's mercy on a continuance since I am—" The trial judge said, "That's denied. We're not going to continue this case."

COURT:  Okay. So we're going to go out there. Mr. Fraiser is going to represent you. You're going to talk to him and tell him what you want, what you want the jury to know, what you want the jury to see, and we're gonna get through this trial. Do you understand that?

DARK:  So I can't represent myself?

COURT:  You can represent yourself through your attorney. You feel confident to represent yourself? To stand up and go through this trial without an attorney and face a jury that can give you fifteen years in the Department of Correction? That's what you want to do?

DARK:       You know what, Ma'am?

COURT:      Yes or no?

DARK:       No, I don't want him to represent me. I would love to have a different counsel.

COURT:      You don't get to pick and choose your counsel, Mr. Dark.

DARK:       I know, yes, ma'am.

COURT:      That's not the way this works. You don't get to choose, unless you hire your counsel, you don't get to choose who is your counsel.

DARK:       If I had a little time I can do that.

COURT:      Well, you've had time. We've already been through this. Today's been the trial date set since July 21st. And you were out most of that time— out of jail. You've had time to get an attorney, you didn't get an attorney. You asked me to appoint the Public Defender. I did that and now you don't want him because we're sitting here ready to go to trial in a few minutes.

DARK:       I would have let go of him earlier, Ms. Hearnsberger, but—

COURT:      But you didn't. But you didn't.

DARK:       No, I was afraid to let him go.

COURT:      But you didn't. You didn't, Mr. Dark.

DARK:       That's why I waited to right here and right now to because I thought that he would—

COURT:      You've been to Court June 16th, July 21st, September 15th, October 13th, November 18th, and today. You've had all those opportunities[.]

. . . .

COURT:      Well, you need to decide because we're about to go out there and you're either going to sit at that table by yourself and try a case which you've never, ever, ever done and given up the expertise of a fine lawyer or you're going to have a fine lawyer represent you. That's your decision. I'm not gonna change it for you.

> And when the Court of Appeals looks at this they're gonna know that we had a long conversation about this and that you chose to do this.
>
> . . . .
>
> DARK:     I tell you what, Ms. Hearnsberger, I've been seeing you for District Court for a long time. You've seen me many, many, many times, unfortunately, and I'm sorry. But since you're telling me this, I'm going to be moved to go ahead and I'm going to abide by what you're saying, but I'm gonna tell you it's against everything in my body that's telling me absolutely don't.

Dark was not diligent in seeking a change of attorneys. He admitted that he had waited until the last minute to mention the possibility of changing attorneys because he was "afraid to let go" of defense counsel. Dark had no other attorney in mind to represent him. Further, Dark cannot show that the trial court "coerced" him into accepting current defense counsel. Coercion is defined as compulsion of a free agent by physical, moral, or economic force or threat of physical force. *Black's Law Dictionary* 315 (10th ed. 2014). Dark ultimately accepted defense counsel's representation based on his respect for the judge's opinion on the matter, not because he had been forced or threatened. Dark waived his right to self–representation. We cannot say that the trial court abused its discretion in denying a continuance and find no prejudicial error in Dark's acceptance of appointed counsel's representation.

### D.    Fitness–to–Proceed Examination

Arkansas Code Annotated section 5-2-305 (Supp. 2015)[2] provided the following:

(a)(1) Subject to the provisions of §§ 5-2-304 and 5-2-311, the court shall immediately suspend any further proceedings in a prosecution if

> (A)(i) A defendant charged in circuit court files notice that he or she intends to rely upon the defense of mental disease or defect.

---

[2]The statute was repealed, effective August 1, 2017.

(ii) After the notice of intent to raise the defense of not guilty for reason of mental disease or defect is filed, any party may petition the court for a criminal responsibility examination and opinion . . . ; or

(B)(i) Any party or the court raises the issue of the defendant's fitness to proceed.

(ii) The court shall order a fitness to proceed examination if it finds there is a reasonable suspicion that a defendant is not fit to proceed.

(2)(A) The fitness to proceed examination, and the criminal responsibility examination and request for an opinion on the defendant's criminal responsibility, are two distinctly different examinations.

Dark argues that a fitness-to-proceed examination was warranted because he himself raised his longstanding psychiatric diagnosis and disability and that the in-chambers discussions put the trial court on notice of his psychiatric issues. He contends that, instead of getting any type of medical input on his mental status, the trial court allowed defense counsel to rebut his (Dark's) statements and contentions.

The following is a colloquy from the in-chambers discussion in which Dark raised the topic of his mental status, and it also ties in with the previous point "C" on appeal:

DARK:    My decision is that I'm gonna be unprepared and I'm gonna represent myself. And it's only because after many, many meetings with Mr. Fraiser—many, many meetings and many, many prayers—is that I've come to the conclusion that I can't trust him.

COURT:   Can you tell me why?

DARK:    I asked him a long time ago—I'm bipolar, and I wanted my medical records introduced into this case. . . . My medical records—I was in a psych ward right before when I left Covenant and right before I got arrested this time and I've been in and out of psych wards all my life and for the last ten years I figured that, you know, that's very important for the jurors to know. Mr. Fraiser says that he thinks that I'm not bipolar, that I was drug induced, but my bipolarism isn't drug induced. I asked him is he a doctor, which he said he wasn't. So this is the

reason—one of the many reasons—and that would be my main reason to let go of Mr. Fraiser. Beside him cussing me on many occasions like a retarded stepchild. That's another reason.

. . . .

COURT:      Okay, so as far as that goes, then, where are we on the mental health issue?

DARK:       I recently went to college. I had to get my records—my medical records—so I reviewed them recently and I believe that they're quite—that they have validity in this case. I really believe that.

COURT:      What kind of medical records are you talking about?

DARK:       I'm talking about from all the way back when I was in rehab and seeing a psychiatrist at a young age. And I've been getting a check for twenty-two years, Ms. Hearnsberger. I mean the doctor, he just told me that I'm bipolar. That's why I know. I mean this is why I get a check.

. . . .

FRAISER:    So as far as this bipolar claim, mental health claim, how does that—let's just assume that it does apply, that he is bipolar—how does that raise to any defense under those fact circumstances?

COURT:      And I'm sure you've discussed that with your attorney.

DARK:       No, I haven't.

FRAISER:    Ad nauseam.

COURT:      Well do you understand that?

DARK:       I understand that I've read my records about who I am and as a bipolar—

COURT:      Do you understand what Mr. Fraiser just said?

DARK:       I don't know if I quite understand what he's saying. He's saying it has nothing to do with my case, I guess?

COURT:      He's saying that it's not a defense to your case.

DARK:       I disagree with that.

COURT:     Are you a lawyer?

DARK:     No, but I mean isn't it validity that I'm—you know, I went and tried to seek help on all these different things. Doesn't that count that I've tried to help myself? I go to these places to help myself. Isn't that something that needs to be brought out?

Criminal defendants are presumed to be competent to stand trial, and they have the burden of proving otherwise. *Thessing v. State*, 365 Ark. 384, 230 S.W.3d 526 (2006). The context of the colloquy demonstrates that Dark raised his mental status in the context of why he wanted to fire defense counsel, which was because defense counsel would not investigate his mental-health background for use as a defense to the possession-of-methamphetamine charge. The statute says a criminal-responsibility exam and a fitness-to-proceed exam are distinctly different. Dark perhaps argues fitness to proceed here because he did not file notice of his intent to use mental defect as a defense at trial. Although Dark asserted that he had a long-standing mental disability, there is no indication from the record that Dark did anything that would have caused the trial court to reasonably suspect that Dark was not fit to proceed. The colloquies show that Dark appeared to understand the charges against him and the proceedings and that Dark seemed capable of assisting counsel in preparation of his defense.

Dark also wants this court to consider the recent holding in *McWilliams v. Dunn*, 582 U.S. ___ (June 19, 2017), where the United States Supreme Court determined that McWilliams did not receive the minimum assistance required by *Ake v. Oklahoma*, 470 U.S. 68 (1985). *Ake* held that, when a defendant demonstrates to the trial court that his or her sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an

appropriate examination and assist in evaluation, preparation, and presentation of the defense.

Dark failed to make the threshold showing per *McWilliams*, *supra*. He did not demonstrate that his sanity at the time of the offense was going to be a significant factor at trial. From the colloquy, it is clear that Dark wanted the jury to hear about his mental-health background because he wanted jurors to see that he had sought help over the years. Dark did not even suggest that his mental state played a role in his decision to possess methamphetamine. We find no reversible error on this point.

Affirmed.

GLOVER and MURPHY, JJ., agree.

*Amos J. Richards*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jake H. Jones*, Ass't Att'y Gen., for appellee.