Cite as 2020 Ark. App. 546

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-20-161

| | |
|---|---|
| WILLIAM H. MILNER III<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** December 2, 2020<br><br>APPEAL FROM THE OUACHITA COUNTY CIRCUIT COURT<br>[NO. 52CR-18-260]<br><br>HONORABLE ROBIN J. CARROLL, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant William H. Milner III was charged by amended information as a habitual offender with the offenses of arson, a Class Y felony; residential burglary, a Class B felony; and theft of property valued at less than $1,000, a Class A misdemeanor. A Ouachita County jury convicted him on all three counts and sentenced him to sixty-five years in the Arkansas Department of Correction and a $100 fine. Milner filed a timely notice of appeal and now challenges the sufficiency of the evidence supporting his convictions.

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Smoak v. State*, 2011 Ark. 529, 385 S.W.3d 257. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Anderson v. State*, 2011 Ark. 461, 385 S.W.3d 214. Substantial evidence is evidence forceful enough to compel a conclusion one way or

the other beyond suspicion or conjecture. *Camp v. State*, 2011 Ark. 155, 381 S.W.3d 11. On appeal, we review the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Collins v. State*, 2014 Ark. App. 551, 444 S.W.3d 889.

In his first argument on appeal, Milner argues that there was insufficient evidence to support his conviction for arson. A person commits arson if he or she starts a fire or causes an explosion with the purpose of destroying or otherwise damaging an occupiable structure or motor vehicle that is the property of another person. Ark. Code Ann. § 5-38-301(a)(1)(A) (Supp. 2019). Arson is a Class Y felony if the property sustains damage in an amount of at least $100,000. Ark. Code Ann. § 5-38-301(b)(5).[1] We now review the evidence concerning the arson offense in the light most favorable to the State.

Milner is the nephew of the late Richard Milner. Before his death, Richard executed a will. In his will, Richard bequeathed his house, located at 120 Van Buren Street in Camden, to three of his friends (Dean Quarles, Chris Cross, and Scotty Griffin) and expressly excluded Milner, Milner's father (Richard Milner's brother), and Milner's sister as beneficiaries of his estate. Richard died on June 28, 2018, and his will was filed in the Ouachita County clerk's office on July 16.

Shortly after Richard's death, Quarles and Cross secured the house with padlocks, locking three of the external doors from the inside and one door from the outside. Quarles, Cross, and Griffin were the only persons with keys to the padlocks. The three beneficiaries

---

[1]Milner does not challenge the jury's finding that the property damage was in excess of $100,000.

frequently checked on the house because Richard had expressed concerns that if anything happened to the house, it would be Milner's doing.

On July 23, 2018, Quarles went to the house between 6:00 and 6:45 in the evening, where he encountered Milner's stepmother, Charlotte, pulling up some plants. Quarles told Charlotte that the property was not hers and that she had no right to be there. Charlotte became belligerent and rude but left. Quarles walked around the outside of the house to make sure the padlocks were still on and did not see anything amiss at that time.

Later that same evening, about 8:00 p.m., Officer DeMoyne Gray of the Camden Police Department observed an individual whom he later determined to be Milner[2] riding a four-wheel all-terrain vehicle at the intersection of Clifton and Adams Streets, within a few blocks of 120 Van Buren. Gray advised Milner that a four-wheeler was not permissible transportation on a city street; although Gray did not issue a citation, he wrote a memo to the police captain about the incident.

About 11:00 that night, Lieutenant Brandon Bradford of the Camden Fire Department saw a man on a four-wheeler drive past the fire department, which was two doors down from the Milner residence. Roughly five minutes later, the fire department was called to respond to a structure fire at 120 Van Buren. Because of the intensity of the fire, firefighters were unable to make entry into the house, and it was a total structural loss. The fire department investigated the cause of the fire. It obtained a thumb drive of a surveillance-camera video recorded at Banks Pawn Shop, which was located about a block away from

---

[2]At Milner's trial, Gray made an in-court identification of Milner.

the house. The time-stamped video showed a four-wheeler being driven down Van Buren Street at 10:53 p.m. About six to eight minutes later, a glow appeared on the video, and at 11:06, firemen are seen responding to the fire. Chief Robert Medford also found a package in the parking lot behind the burned structure. While he was unable to determine the cause of the fire, Medford completed an investigative report and checked the box for "arson," indicating that the fire had suspicious origins.

Captain John Voss of the Camden Police Department also investigated the fire. He took photos of the structure the following morning. He also took photos of and examined the package found behind the building by Fire Chief Medford. Inside the package, Voss found a bag containing a box with a label describing the contents as Richard Milner's cremated remains. Voss was able to determine that the cremated remains were located inside the home before the fire. On further investigation, Voss learned that Griffin had purchased a game camera about a week before the fire and installed it inside the house but that firefighters had been unable to locate such a camera in the ruins of the fire.

Voss developed Milner as a suspect in the blaze and subsequently obtained a search warrant for Milner's house. When the warrant was executed, Voss found a game camera in a boat in the carport of Milner's house. Voss retrieved the SIM card from the camera and found a series of time-stamped photographs showing Milner inside the house at 120 Van Buren. In one photograph, State's exhibit 43, Milner was depicted standing in front of a cabinet that stored moonshine and other alcohol, smoking a cigarette, and holding a metal can or glass container in one hand and a rag in the other.

In addition to this evidence from authorities, Charlotte Milner, Milner's stepmother, confirmed that Milner was staying at the house where the search warrant had been executed. She also related that on the day of the fire, Milner's father was out of town and Milner was driving his father's four-wheeler around town.

Milner argues that the foregoing constitutes only circumstantial evidence, which he contends is insufficient to convict him of the crime of arson. He notes that no witness directly tied him to any criminal act, there was no forensic evidence connecting him to the crime, and he did not make any incriminating statements. Circumstantial evidence, however, may provide a basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Caple v. State*, 2020 Ark. 340, 609 S.W.3d 630. Whether circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the fact-finder to decide. *Booth v. State*, 2014 Ark. App. 572, 444 S.W.3d 900. Further, the credibility of witnesses is an issue for the jury and not the court. *Caple*, *supra*. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id*.

Although circumstantial, we conclude that the evidence introduced by the State was compelling and did not leave the jury to resort to speculation and conjecture. To summarize, Milner was deliberately disinherited by his uncle in a will that was probated a week before the fire; his stepmother was ordered off of the property the day of the fire; Milner was observed riding a four-wheeler in the vicinity of the house hours before the fire started; a four-wheeler was seen driving down Van Buren Street in the minutes around the time the fire started; Richard Milner's cremated remains were removed from the home before the

5

fire; and photos taken from a game camera, found in a search of the residence where Milner was living, placed Milner inside the house holding a cigarette, a jar apparently taken from a liquor cabinet, and a rag.

Jurors do not and need not view each fact in isolation but may consider the evidence as a whole. *Price v. State*, 2009 Ark. App. 664, at 2, 344 S.W.3d 678, 680–81. Moreover, the jury is entitled to draw any reasonable inference from circumstantial evidence to the same extent that it can from direct evidence. *Swanigan v. State*, 2019 Ark. App. 296, 577 S.W.3d 737. When the evidence supporting the arson conviction is taken as a whole and viewed in the light most favorable to the State, although it is circumstantial, it is sufficient to show that Milner started a fire with the purpose of damaging or destroying his late uncle's house. We therefore affirm Milner's arson conviction.

Milner also challenges the sufficiency of the evidence supporting his conviction for residential burglary. A person commits that offense if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2013).

On appeal, Milner argues that there was no evidence that he entered his uncle's residence with the purpose to commit "a felony." This is not the standard, however, as the statute is clear that one must have the purpose of committing an offense "punishable by imprisonment." In addition to arson, Milner was also convicted of theft of property—which

he does not challenge on appeal[3]—and theft of property is punishable by imprisonment. *See* Ark. Code Ann. § 5-36-103(b)(4)(A) (Supp. 2019) (theft of property is a Class A misdemeanor if the value of the property is $1000 or less); Ark. Code Ann. § 5-36-103(b)(4)(B) (theft of property is a class A misdemeanor if "the property has inherent, subjective, or idiosyncratic value to its owner or possessor even if the property has no market value or replacement cost"); Ark. Code Ann. § 5-4-401(b)(a) (Repl. 2013) (Class A misdemeanor punishable by up to one year in prison); *Gillean v. State*, 2015 Ark. App. 698, at 11, 478 S.W.3d 255, 263 (rejecting argument that commercial-burglary statute[4] requires the intent to commit a felony and holding that misdemeanor theft of property is sufficient to support a commercial-burglary conviction). Milner's unchallenged theft conviction alone thus constitutes sufficient evidence to support his conviction for residential burglary.

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

---

[3]Milner failed to move for directed verdict with respect to the theft charges; therefore, any argument pertaining to that conviction would not be preserved for appeal. *See, e.g., Dark v. State*, 2017 Ark. App. 570, 534 S.W.3d 725.

[4]Commercial burglary differs from residential burglary only in the type of structure involved. *See* Ark. Code Ann. § 5-39-201(b)(1) (Repl. 2013) ("A person commits commercial burglary if he or she enters or remains unlawfully in a commercial occupiable structure of another person with the purpose of committing in the commercial occupiable structure any offense punishable by imprisonment.").